UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHIRLEY JONES,

       Plaintiff,                               Case No. 5:03-CV-123

v                                                 Hon. Gordon J. Quist

LANSING HOUSING COMMISSION,
et al,

       Defendants.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff has filed a seven-count complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated both federal constitutional law and federal statutes in connection with her subsidized housing. Before the court is plaintiff's motion for a preliminary injunction (docket no. 3) seeking immediate restoration of her Section 8 subsidy, pending adjudication of plaintiff's complaint. A hearing on this motion was held on September 10, 2003, at which time the undersigned heard oral argument from the parties and sworn testimony from the plaintiff. No other witnesses were called. The court has also been furnished with various exhibits by the parties during and after the hearing. For the reasons set out below, I respectfully recommend that the preliminary injunction be granted.

**Background**

The following is a synopsis of the information presently before the court. Plaintiff Shirley Jones is a 51-year-old wheelchair-bound, quadriplegic, single woman suffering from a

traumatic brain injury, which she asserts affects her memory and comprehension. Prior to the events leading to her complaint, plaintiff was receiving federal housing benefits under the Section 8 voucher program of 42 U.S.C. § 1437f(o). These benefits were dispensed for plaintiff's benefit through the Lansing Housing Commission (LHC), which is a public housing authority (PHA) operating under the authority of the City of Lansing and the U.S. Department of Housing and Urban Development (HUD). As a PHA, the Lansing Housing Commission operates onsite low-cost housing projects and administers federal Section 8 vouchers for persons renting privately.

Under the Section 8 program, plaintiff, as a low income individual, rents her residence from a private landlord and pays approximately one-third of her income directly to the landlord. The remainder of her rent is paid by the PHA to the landlord using HUD money. On May 4, 2002, plaintiff entered into a one-year lease with her landlord. Monthly rent was set at $544.00, including utilities, an amount determined by LHC to be the fair market value of the property. Thus, plaintiff paid approximately $218.00 per month in rent to the landlord, and the landlord received a voucher from LHC each month for the remaining portion of the rent, which was approximately $360.00. Until recently, when plaintiff picked up some part-time telemarketing work, her sole source of income had been $572.00 a month from social security.

Plaintiff had no direct dealing with the LHC until her benefits were terminated. Normally, a new recipient of Section 8 benefits is required to go to the LHC to attend an orientation session regarding benefits. Due to her physical condition, plaintiff was unable to attend this orientation in 2002, and her adult daughter went in her place.[1] Further, the paperwork for the lease

---

[1] Plaintiff has also brought a claim under the Americans For Disability Act, 42 U.S.C. § 12101 et seq., alleging that the LHC did not accommodate her disability.

was handled by the landlord, who brought the necessary documents to the plaintiff, and then returned them to the LHC.

In March 2003, during a re-certification of plaintiff's landlord, the landlord provided an annual update to defendant, dated February 22, 2003, stating that plaintiff's monthly rental amount was $600.00, with the statement "<u>no utilities included</u>." The effective date of the revised lease was June 1, 2003. *See* 2/19/03 letter, Plaintiff's Exh. I. At the top of the letter, someone wrote that plaintiff had paid the electric and Sara McGovern had paid the water "since May 2002." *Id.* An LHC investigator found the utilities were in plaintiff's name. Upon discovering that plaintiff was making these "side payments" for her utilities, the LHC decided plaintiff was committing fraud and that her Section 8 benefits were subject to immediate, and apparently permanent, termination.

LHC sent a notice to plaintiff on March 28, 2003 stating that LHC was going to terminate her Section 8 subsidy effective April 30, 2003. Plaintiff's Exh. A, p. 2. The reason given in the notice was:

> "Failure to comply with program requirements, misrepresentation of monthly rent, and utilities paid by you – not the landlord."

Plaintiff was also told that she could "request an informal hearing". This notice was the only one received by plaintiff, and did not inform her of any other procedural rights.

Plaintiff requested a hearing and it was held on April 21, 2003. Present were plaintiff; her daughter; her landlord; Carmen Gomez, the supervisor of the Section 8 program at LHC; and a hearing officer supplied by the LHC. Plaintiff did not have an attorney, and no witnesses were called. No recording was made of the hearing, so there is no transcript of it. Plaintiff was allowed to examine documents at the hearing, present evidence and ask questions. According to plaintiff,

3

the landlord at the hearing stated a willingness to accommodate the plaintiff and the LHC to satisfy the necessary requirements, but the LHC was not interested. The landlord, in a separate hearing, has also been barred from the Section 8 voucher program.

Following the hearing plaintiff was told that the termination of her subsidy had been upheld. This determination was contained in a letter to plaintiff from the hearing officer, the text of which states in its entirety:

> This letter is to inform you, that based upon information reviewed at your Informal Hearing on Monday, April 21, 2003, it has been determined that the decision to terminate your Section 8 Subsidy with the Lansing Housing Commission will be upheld.
>
> If you have any questions, please feel free to call our office at (517) 487-6550.

Exhibit A, p. 1.

Plaintiff maintains that she

> "paid the utility payments for my rental housing because my landlord told me to. I did not know that this was wrong. I thought that my landlord was acting with LHC's approval."

Affidavit of plaintiff, dated August 26, 2003. Plaintiff maintains that she is the only one who has been defrauded.

Plaintiff 's Section 8 benefits were, in fact, terminated, and she claims she has only been able to keep her residence on a month-to-month basis because of the cooperation of her landlord and money she has received from her family. Plaintiff seeks prospective reinstatement of her Section 8 benefits pending adjudication of this matter.

4

**Discussion**

### I. Standard of Review

In reviewing requests for injunctive relief, the court considers (1) whether the movant has shown a strong or substantial likelihood or probability of success on the merits; (2) whether the movant has shown irreparable injury; (3) whether the preliminary injunction will cause substantial harm to others; and (4) whether the injunction would serve the public interest. *See Wilson v. Wilkinson,* No. 01-3569, 2002 WL 123580 at *1 (6th Cir. Jan. 28, 2002); *McPherson v. Mich. High School Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997)(en banc); *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994).

Consideration of a motion for a preliminary injunction does not implicate a final determination of the merits of a lawsuit; instead, an essential concern is preserving the existing state of affairs until the rights of the parties can be fully investigated and fairly determined. *Blount v Societe Anonyme Du Filtre Chamberland Systeme Pasteur,* 53 F. 98, 101 (6th Cir. 1892). *See also, Six Clinics Holding Corporation II v Cafcomp Systems, Inc.,* 119 F.3d 393, 400 (6th Cir., 1997)("[t]he purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held"), quoting *University of Texas v Camenisch,* 451 US 390, 395 (1981). This concern involves the court in weighing the necessity of preserving its power to ultimately and effectively decide the case against the risk that harmful consequences will attend the imposition of preliminary injunctive relief. *See 11* Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure,* § 2947 (1973). *See also, Chrysler Corp. v Franklin Mint Corp.,* 32 F.3d 569, 1994 WL 378144 (6th Cir., July 19, 1994)(unpublished); and *F.E. Williamson v H.R. White,* 16 F.3d 1223, 1994 WL 49594 (6th Cir., February 17, 1994)(unpublished).

The four factors listed above are meant to be balanced as they guide the court in exercising its discretion; they are not due rigid application and need not be assigned equal weight. *In re Eagle-Pitcher Indus., Inc.,* 963 F.2d 855, 859 (6th Cir. 1992). While a court need not consider any single factor as either indispensable or dispositive, neither is it required to conclude that all four support its decision. The court's discretion is directed at the weight to be given each factor, and the effect to be accorded their mix. Furthermore, the plaintiff bears the burden of persuading the court that the factors weigh in favor of granting a preliminary injunction. *Granny Goose Foods, Inc. v Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 432, 441 (1974).

Finally, the standard for a preliminary injunction differs from than that required for permanent injunctive relief. *See, ACLU of New Jersey v Black Horse Pike Reg. Bd. of Education,* 84 F.3d 1471, 1477 (3d Cir. 1996). The decision to grant a preliminary injunction is based on an assessment of the <u>likelihood</u> that plaintiffs will succeed on the merits. This decision neither constitutes nor substitutes for an actual finding that plaintiffs <u>have</u> succeeded on the merits and are entitled to permanent relief. *Id.* "In deciding whether a permanent injunction should be issued, the court must determine if the plaintiff has actually succeeded on the merits (i.e. met its burden of proof). If so, the court must then consider the appropriate remedy." *CIBA-GEIGY Corp. v Bolar Pharmaceutical Co., Inc.,* 747 F.2d 844, 850 (3d Cir. 1984).

**II. Analysis of plaintiff's claim for preliminary injunction**

In the present action, plaintiff seeks a preliminary injunction to enjoin defendant from terminating her Section 8 housing subsidy.

The parties concur that as an established recipient of Section 8 benefits (as opposed to a new applicant), plaintiff had a constitutionally protected property interest in maintaining her benefits, absent a proper termination of the benefits following due process.. The core of the dispute before the court lies in the procedure defendant Lansing Housing Commission used to terminate plaintiff's subsidy.

### A. Administrative Procedures Act

As an initial matter, plaintiff contends that the federal Administrative Procedure Act (APA) governs the process by which plaintiff's Section 8 benefits were terminated. The defendant seems to concur. I disagree. The only current authority of which I have been made aware holds that the APA does not apply to state agencies. *See Clark v. Alexander*, 85 F.3d 146, 151 (4th Cir. 1996) ("[t]he Administrative Procedure Act's regulation of the scope of court review, found at 5 U.S.C. § 706, is not applicable to housing authorities"); *Ritter v. Cecil County Office of Housing and Community Development*, 33 F.3d 323, 327-28 (4th Cir. 1994) (APA does not provide standard of review for consideration of a decision by a local public housing agency to terminate benefits); *Hill v. Richardson*, 7 F.3d 656, 657 (7th Cir. 1993) (APA does not apply to the state government administering federal programs, including Section 8 [42 U.S.C. § 1437f]). *See generally*, *Southwest Williamson County Community Association v. Slater*, 173 F.3d 1033, 1035 (6th Cir. 1999) ("[b]y its own terms, the APA does not apply to state agencies"); *Day v. Shalala*, 23 F.3d 1052, 1064 (6th Cir. 1994) (district court erred in holding that Ohio Bureau of Disability Determination is subject to the APA, "[b]ecause the APA applies only to federal agencies" ).

       **B.**      **Due Process: Adequacy of Notice, Hearing, and Decision**

       **1.**      **Due process required by HUD in terminating Section 8 subsidies**

Whether a housing authority's termination procedures satisfy due process concerns must be judged in light of the requirements set out in *Goldberg v. Kelly*, 397 U.S. 254 (1970). *Goldberg* involved the scope of a "fair hearing" to be applied to the decision to terminate financial aid under the federally assisted aid to Families with dependant children program. Under rules adopted by HUD, "PHA's must adopt written informal pretermination hearing procedures for participants, which fully meet the requirements of *Goldberg v. Kelly*." 55 Fed. Reg. 28538, 28541 (July 11, 1990), 1990 WL 334093. *See Clark*, 85 F.3d at 150-51*); Edgecomb v. Housing Authority of Town of Vernon*, 824 F. Supp. 312, 314 (D. Conn. 1993).

       **2.**      **Defendant Lansing Housing Authority has failed to adopt hearing procedures for informal hearings.**

It does not appear from the evidence currently of record that LHC has adopted the necessary pretermination hearing procedures as mandated by 24 CFR § 982.555(e)(1) ("[t]he administrative plan must state the PHA procedures for conducting informal hearings for participants"). Pursuant to the court's request at the preliminary injunction hearing for a copy of such rules, defendant has submitted to the court a copy of the "Public Housing Grievance Procedure," which it contends controls plaintiff's termination proceeding. A copy of this procedure is attached to this Report and Recommendation as Attachment A.[2] The grievance procedure does not refer to the type of pretermination informal hearing at issue in this suit.

---

[2] In order to expedite these proceedings, the court requested defendants to submit a copy of the procedure via facsimile. As a result, defendants were not required to file the procedures with the clerk.

8

### 3. *Goldberg* Requirements

In *Clark*, the court stated that *Goldberg* places the following five requirements on the termination process employed by a housing authority:

> (1) timely notice from the housing from the housing authority stating the basis for the proposed termination, (2) an opportunity by the tenant to confront and cross-examine each witness relied on by the housing authority, (3) the right of the tenant to be represented by counsel, (4) a decision, based solely on evidence adduced at the hearing, in which reasons for the decision are set forth, and (5) an impartial decisionmaker.

*Clark*, 85 F.3d at 150. The court noted that the federal regulations in effect at the time, 24 C.F.R. § 882.216(b)(6) "set out the basic procedural requirements of informal hearings in almost literal compliance with *Goldberg*." *Id.* The regulations have been revised since that time, with the current regulations at 24 C.F.R. § 982.555.[3] Thus, regardless of whether LHC has adopted appropriate procedures or not, the *Goldberg* requirements as memorialized in the CFRs provide the minimum threshold of process due plaintiff in this case. These regulations provide a number of procedural safeguards to persons like plaintiff, and supplement any informal hearing the purpose of which is to provide "[a] determination to terminate assistance for a participant family because of the family's action or failure to act (see § 982.552)." 24 C.F.R. § 982.555(a)(1)(v).

First, prior to any hearing for a termination pursuant to § 982.555(a)(1)(v), "the PHA must give the family prompt written notice that the family may request a hearing." 24 C.F.R. § 982.555(c)(2). This notice must: contain a brief statement of reasons for the decision; "state that if

---

[3] 24 C.F.R. § 882.216 was removed in 1995. *See* 60 Fed. Reg. 34660, 34694 (July 3, 1995), 1995 WL 387042. The current termination procedure is summarized in *Litsey v. Housing Authority of Bardstown*, No. 3:99-CV-114-H, 1999 WL 33604017 (W.D. Ky. April 1, 1999).

the family does not agree with the decision, the family may request an informal hearing on the decision;" and state the deadline for requesting an informal hearing. § 982.555(c)(2)(i)-(iii).

Second, the PHA's administrative plan must state its procedures for conducting informal hearings. § 982.555(e)(1). The PHA must allow the family access to discovery:

> The family must be given the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing. The family must be allowed to copy any such document at the family's expense. If the PHA does not make the document available for examination on request of the family, the PHA may not rely on the document at the hearing.

§ 982.555(e)(2)(i). The regulations also provide for similar discovery by the PHA. *See* § 982.555(e)(2)(ii). "At its own expense, the family may be represented at the hearing by a lawyer or other representative." § 982.555(e)(3).

Third, the hearing officer may be any person designated by the PHA other than a person who made or approved the termination decision under review, or a subordinate of this person. § 982.555(e)(4)(i)

Fourth, "The PHA and the family must be given the opportunity to present evidence, and may question any witnesses." § 982.555(e)(5). However, evidence may be considered without regard to its admissibility under the rules of evidence applicable to judicial proceedings. *Id.*

Fifth and finally, the hearing officer must issue a decision as follows:

> The person who conducts the hearing must issue a written decision, stating briefly the reasons for the decisions. Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence presented at the hearing. A copy of the hearing decision shall be furnished promptly to the family.

§ 982.555(e)(6).

### 3. Inadequacy of Notice

Here, the LHC terminated plaintiff's assistance for committing fraud, apparently pursuant to 24 C.F.R. § 982.552(c)(1)(iv), which provides that a housing authority may terminate assistance to an individual "[i]f any member of the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program (see also § 982.553(a)(1))."[4] The regulations do not discuss the amount of information contained in the "brief statement of reasons for the decision" to terminate assistance. However, courts have found that the notice must, at the very least, inform the resident of the situation so that she can make an intelligent response. The purpose of the notice requirement is to inform the tenant of the allegations. *Edgecomb*, 824 F. Supp. at 314, *citing Escalera v. New York City Housing Authority*, 425 F.2d 853, 862 (2nd Cirr. 1970) (reviewing prior regulations). Notice should be sufficiently specific to enable the applicant to prepare a rebuttal defense to introduce at the hearing. *Edgecomb*, 824 F. Supp. at 315, *citing Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980). A notice that does not indicate the nature of the proscribed acts or when the acts were committed is insufficient. *See, e.g.*, *Edgecomb*, 824 F. Supp. at 315. A proper notice under *Goldberg* would state the particular act alleged committed and give a brief factual statement concerning the incident. *Id.*

LHC had information prior to the March 28, 2003 hearing notice (1) that the lease provisions described by plaintiff's landlord were apparently different from the lease terms reported to defendant, both in amount and as to the party responsible for paying the utilities; (2) that plaintiff was apparently listed as the party responsible for paying the electric bill; and (3) that Sara McGovern

---

[4] Section 982.553(a)(1) refers to the termination of assistance "for criminals and alcohol abusers."

was listed as the party responsible for paying the water bill. Nevertheless, even though it had investigated the matter, its March 28th letter merely stated, "Failure to comply with program requirements, misrepresentation of monthly rent, and utilities paid by you – not the landlord." None of the foregoing information was included, the "program requirements" were not identified, and the nature of how the monthly rent was being misrepresented was not explained. This cryptic description contained minimal information and failed to comply with the requirements of *Goldberg*.

Furthermore, while the regulations do not specifically require the notice to advise the resident of her right to have an attorney or representative present at the hearing, it is difficult to conceive how the Lansing Housing Commission could give fair notice without including mention of this right to an attorney in the notice. The resident's right to have an attorney present is worth nothing if the resident is unaware of that right. (Similarly, it is also questionable how a notice can be adequate when it does not advise the resident of her right to discovery and to examine documents before the hearing.) A lay person would consider an "informal hearing" to be just that, an informal meeting to discuss their benefits. The term "informal hearing" does not conjure up images of a contested proceeding including a hearing officer, and discovery and cross-examination of witnesses, leading to a bar of benefits.

Finally, the reason given in the notice of termination is both misleading and insufficient. The notice stated that plaintiff's assistance was being terminated due to "Failure to comply with program requirements, misrepresentation of monthly rent, and utilities paid by you – not the landlord." However, from the beginning, LHC acknowledges that the basis relied upon for termination was fraud, pursuant to 24 C.F.R. § 982.552(C)(iv), i.e., "the family has committed fraud, bribery, or any other corrupt or criminal act in connection with any Federal housing program."

An allegation of "misrepresentation" alone is not necessarily synonymous, legally or in the vernacular, with fraud. A misrepresentation is simply an untrue statement of fact. The misrepresentation may be innocent, negligent or fraudulent. See *Black's Law Dictionary,* 4th ed., at 1152. Consequently, an informal hearing on a mere charge of "misrepresentation" might well be approached differently, particularly by a layperson, than a hearing on a charge of "fraud . . . or . . . other corrupt or criminal act." It was the responsibility of LHC to put plaintiff on notice of the severity of what it was claiming. Based upon this record, the notice sent to plaintiff was plainly insufficient to inform her of either the substance or procedure of the informal hearing.

### 4. The procedure followed at the hearing

While there is no transcript of the hearing, plaintiff's testimony indicates that she had an opportunity to ask questions and view the evidence. Since no witnesses were called to testify, plaintiff had no occasion to exercise her right to cross-examine, if she was ever aware of it. *See* 24 C.F.R. § 982.555(e)(5). However, since plaintiff received inadequate notice of the hearing, her inability to prepare a rebuttal case tainted the proceedings to some extent. For example, it remains unclear just which provision of the housing rules plaintiff is alleged to have violated by making side payments, and if this was a violation, was wrongful intent required. The court has an insufficient record at the present time to state that the hearing portion of the process was so tainted as to result in a violation of due process.

### 5. The hearing officer's decision

Finally, the hearing officer's one-sentence decision issued on April 28, 2003 fails meet the requirements of 24 C.F.R. § 982.555(e)(6). The letter is utterly void of any factual basis or legal reasoning explaining the adverse decision. There is no reference to any applicable

13

regulations. There is no indication of the standard or burden of proof used. This type of vague decision fails to meet the requirements of the regulations and *Goldberg*. *See, e.g., Edgecomb*, 824 F. Supp. at 316.

### 6. Conclusion

Upon reviewing the evidence, regulations, and case law, I conclude that defendant Lansing Housing Commission terminated plaintiff's Section 8 subsidy without affording her the due process rights announced in *Goldberg* and set forth in the applicable HUD regulations. Specifically, defendant Housing Commission gave inadequate notice of the hearing and provided an inadequate, unsupportable decision afterwards.

### C. Elements of preliminary injunction

#### 1. Has plaintiff shown a strong or substantial likelihood or probability of success on the merits?

Yes. For the reasons discussed in Section B, *supra.*, plaintiff has demonstrated a strong or substantial likelihood that she will succeed on the merits with respect to her due process claim.

#### 2. Has plaintiff shown irreparable injury?

Yes. Plaintiff's loss of her Section 8 assistance would result in the loss of her apartment. Other courts have held that the loss of subsidized housing constitutes irreparable injury justifying injunctive relief. *See Jackson v. Jacobs*, 971 F. Supp. 560, 565 (N.D. Ga. 1997); *Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992), aff'd, 985 F.2d 579 (11th Cir. 1993). In addition, plaintiff is not only a low-income individual, but she is a quadriplegic with a history of brain trauma.

The loss of Section 8 assistance would have a greater impact plaintiff than on another person without these disabilities.

### 3. Will a preliminary injunction will cause substantial harm to others?

No. It has been suggested that the taxpayers would lose money if plaintiff's voucher was reinstated by the preliminary injunction and then plaintiff was later found to be ineligible. However, this situation would not result in "substantial harm." The taxpayer's money will be spent on a voucher to provide housing to a person who was, at least initially, eligible to receive the assistance. There is no evidence that the modest amount of money involved in this dispute would cause substantial harm to the operation of the Lansing Housing Commission or HUD.

### 4. Will a preliminary injunction serve the public interest?

Yes. The public has an interest in the proper administration of the Section 8 program. "[T]here is a great public interest in guaranteeing that those in financial need are not unreasonably terminated from public assistance benefits." *Jackson v. Jacobs*, 971 F. Supp. at 565. "According to HUD regulations, the goal of the Section 8 program is to assist low income families in obtaining decent, safe, and sanitary housing." *Basham*, 805 F. Supp. at 932. The public has an interest in using public programs to prevent individuals, such as plaintiff, from being homeless. The public interest would not harmed by reinstating plaintiff's benefits for the pendency of this suit.

### 5. Balancing the factors

In balancing the four factors, I conclude that plaintiff is entitled to a preliminary injunction. Plaintiff has demonstrated a strong likelihood that she will succeed on the merits of her due process claim. Plaintiff would suffer irreparable harm if she lost her subsidized housing. The

harm to others is negligible. Finally, the public has an interest in the proper functioning of programs that assist those members of society in need of financial assistance. Based on the present record, all of the factors are in plaintiff's favor.

### **Recommendation**

Accordingly, I respectfully recommend that plaintiff's motion for a preliminary injunction (docket no. 3) be GRANTED and that defendants reinstate her Section 8 voucher payments instanter.


Dated: September 19, 2003   /s/ Hugh W. Brenneman, Jr.
                            Hugh W. Brenneman, Jr.
                            United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).