IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED — LN
MAY -3 PM 4:00

SHIRLEY JONES,                          )
                                        )
        PLAINTIFF,                      )    CASE NO. 5:03 cv 123
                                        )
                                        )
v.                                      )
                                        )    HON. HUGH W. BRENNEMAN, JR.
LANSING HOUSING COMMISSION and          )
CHRIS STUCHELL in his capacity as       )
executive director, and                 )
CARMEN GOMEZ in her capacity as         )
Section 8 coordinator                   )
                                        )
        DEFENDANTS.                     )
                                        )

BRIEF IN SUPPORT
OF PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT

LEGAL SERVICES OF SOUTH CENTRAL MICHIGAN
By:   Sarah E. Bouck (P-40216)
Attorneys for Plaintiff
3490 Belle Chase Way Suite 50
Lansing, MI 48911
(517) 394-2985 Ext.234

Date: May 3, 2004

## ISSUES PRESENTED

Is plaintiff-movant entitled to summary judgment, that is,

1. Is there any genuine issue as to any material fact relevant to this action?

2. Is Plaintiff is entitled to summary judgment in her favor, as a matter of law?

1

## CONTROLLING AUTHORITIES

*Baldwin v. Housing Authority of City of Camden*,
278 F.Supp. 2nd
365, 369 (D. N.J. 2003)                           Page 3


*Wilson v. Continental Development Co.*, 112 F.Supp.2d 648,

660,661 (W.D. Mich. 1999), aff'd 234 F.3d 1271 (6th Cir.

2000)                                             Page 8


*D & W Food Centers, Inc. v. Block*, 786 F.2d 751, 757 (6th

Cir. 1986)                                        Page 10


*Georgia Pacific Corp v. Occupational Safety and Health

Review Commission*, 2 F.3d 999 (11th Cir. 1994)   Page 11


*Hill v. Richardson*, 740 F.Supp 1393 (S.D. Ind. 1990)

                                                  Page 11


*Goldberg v. Kelly*, 397 U.S. 254 (1970)          Page 11


*Whittaker v Fayette County*, 65 Fed. App. 387, 2003 U.S.

App. LEXIS 6864 (3d Cir., April 9, 2003, Opinion filed.)

                                                  Page 12

2

## FACTS

(A recently issued federal court opinion offers a helpful overview of the federal housing program at issue in this case, i.e., the Section 8 Tenant-Based Housing Choice Voucher Program ("Section 8")):

> [The Section 8 voucher program] is one of several rent subsidy programs established pursuant to Section 8 of the United States Housing Act of 1937, as amended by the Housing and Community Development Act of 1974, 42 U.S.C. § 1437f ("Housing Act"). These housing assistance programs, referred to collectively as "Section 8," were created by Congress in order to help low-income families obtain "a decent place to live" and to promote economically mixed housing. Under the program, the Secretary of Housing and Urban Development ("HUD") is empowered to enter into contracts with state and local public housing agencies ("PHAs") and fund such agencies through annual contribution contracts. PHAs are authorized to receive applications from eligible persons seeking housing assistance, approve or deny the applications, and then provide vouchers to approved applicants. *Baldwin v. Housing Authority of City of Camden*, 278 F.Supp. 2nd 365, 369 (D. N.J. 2003)

After an applicant receives a voucher, and becomes a participant in the program, that person can set out on the challenge of "leasing up" with the voucher. If the family finds an eligible landlord, a unit that passes a housing quality inspection and has a reasonable rent, the family can seek PHA approval of the tenancy. See 24 CFR 982.305.

3

If the unit is approved, there are three relationships subject to program requirements: landlord/owner-tenant/participant; landlord/owner -PHA; and tenant/participant-PHA.

The amount of Section 8 voucher financial assistance a family generally receives is determined by subtracting 30% of adjusted household income (known as "total tenant payment", see 24 CFR 5.628) from the PHA's "payment standard". 24 CFR 982.505.  The payment standard is generally based on a percentage between 90-110% (usually 100%) of an area's Fair Market Rent (FMR). See 24 CFR 982.503(b).  If the "contract" or lease rent for a unit is greater than the payment standard, the family will have to pay more than 30% of its adjusted income towards rent.

The program obligations of a tenant/participant family are stated at 24 CFR 982.551.  24 CFR 982.552 lists the grounds for termination of program assistance.

The federal regulations prescribe the minimum level of procedural due process that a participant family which the PHA proposes to terminate from the program is entitled to. See 24 CFR 982.555.  In such cases, the PHA must give the family the opportunity for an informal hearing before it terminates the Section 8 housing assistance. 24 CFR 982.555

4

(a)(2). The notice of proposed termination must be given promptly and in writing, and it must contain a statement of the reasons for termination, and inform the family of its right to request a hearing and the deadline for doing so. 24 CFR 982.555(c)(2). Among the hearing procedural requirements is a written decision that states the reason for the decision. 24 CFR 982.555(e)(6).

In the case at bar, the following facts are not in issue.

Plaintiff Shirley Jones is a 51-year-old, quadriplegic, single woman who also has traumatic brain injury.

Plaintiff had no direct dealing with the Defendant, the Lansing Housing Commission, until her benefits were terminated. The paperwork for obtaining the subsidy was handled by the landlord, who brought the documents to Plaintiff to sign, and then returned them to the Defendant.

On May 4, 2002, Plaintiff signed a lease stating the monthly payment was to be $544.00 including utilities.

In March 2003, during a recertification process, Defendant Lansing Housing Commission (hereafter, the LHC) discovered that Plaintiff was paying the utilities herself, contrary to the lease which provided that utilities were to be included in the

5

rent. The LHC considered this to be a "side-payment."

On March 28, 2003 the LHC sent Plaintiff a letter stating that her section 8 voucher would be terminated effective April 30, 2003. The reason given in the notice was

> "failure to comply with program requirements, misrepresentation of monthly rent, and utilities paid by you-not the landlord." **EXHIBIT A.**

Plaintiff requested an informal hearing, which was held on April 21, 2003. The hearing decision stated:

> "This letter is to inform you, that based upon information reviewed at your Informal Hearing on Monday, April 21, 2003, it has been determined that the decision to terminate your Section 8 Subsidy with the Lansing Housing Commission will be upheld. If you have any questions, please feel free to call our office at (517) 487-6550." **EXHIBIT B.**

Plaintiff had no meaningful written or verbal notice that Plaintiff's payment of utilities would be considered fraudulent and grounds for termination of her subsidy.

6

## ARGUMENT

Summary judgment is appropriate when the pleadings, admissions on file and affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.

In the case at bar, the hearing officer's written decision is devoid of any findings of fact, application of the law, or consideration of Defendant's disability or other mitigating factors. **EXHIBIT B.** This is contrary to Federal housing law, 24 CFR 982.552. There is no other written, or recorded, record of the hearing, other than the written decision.

Indeed, Defendant has admitted that the hearing procedure afforded Plaintiff was procedurally flawed and indefensible. On September 10, 2003, Defendant's counsel stated in open Court that the LHC hasn't been "doing it the right way."

## A. DEFENDANT HAS NOT MADE ANY SHOWING THAT PLAINTIFF COMMITTED "FRAUD"

24 CFR 982.551 lists the program obligations of Section 8 voucher tenant participants. Its subpart (k) says that "the

7

members of the family must not commit fraud, bribery or any other corrupt or criminal act in connection with the programs." Neither the termination notice, nor the hearing decision specifies which of these offenses Plaintiff was found to have committed.

For the sake of argument, Plaintiff will assume that Defendant determined that she had committed fraud.

Under Michigan law, there are 5 elements to fraud: "(1) that [a party] made a material representation; (2) that it was false; (3) that when [s]he made it [s]he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that [s]he made it with the intention that it should be acted upon by [the other party]; (5) that [the other party] acted in reliance upon it; and (6) that [the other party] suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery." *Wilson v. Continental Development Co.*, 112 F.Supp.2d 648, 660,661 (W.D. Mich. 1999), aff'd 234 F.3d 1271 (6th Cir. 2000)

There is no evidence in the record that Plaintiff made any material misrepresentation to Defendant about making side payments to her former landlord. Defendant has not specifically

8

alleged that Plaintiff made a material misrepresentation to Defendant. Defendant has not specifically alleged any facts that would constitute the elements of fraud.

At a hearing in this Court on September 10, 2003, Defendant stated that it must take "harsh action to maintain the program's integrity." Defendant seems to have determined that "side payments," as a matter of policy, and regardless of intent or other legal criteria, constitute "fraud" on the part of both landlord and tenant (both are then barred from the program).

## B. DEFENDANT HAS NOT SHOWN THAT PLAINTIFF FAILED TO PROVIDE TRUE AND COMPLETE INFORMATION

As stated above, 24 CFR 982.551 lists the program obligations of Section 8 voucher tenant participants. Its subpart (b)(4) says that "any information supplied by the family must be true and complete." Again, neither the termination notice, nor the hearing decision specifies that Plaintiff violated this provision, and Plaintiff must assume that this is Defendant's implicit allegation. This provision does not stand on its own, but is a subpart of 24 CFR 982.551(b), which is labeled "supplying required information". While Plaintiff asserts that she has provided true and complete information to

Defendant on all matters, the "true and complete" requirement of
24 CFR 982.551(b)(4) pertains only to information required or
requested by Defendant.  Defendant has not specifically alleged
that Plaintiff provided untrue and incomplete information to any
request of Defendant.

## C. PLAINTIFF HAD NO NOTICE THAT PAYING THE UTILITIES WOULD BE CONSIDERED "FRAUD" AND A BASIS FOR TERMINATING HER SUBSIDY.

Defendant has not alleged, and the record does not reflect,
that Defendant adopted, published, or notified Plaintiff of a
rule or policy for tenant participants that making side payments
was prohibited and would subject them to termination from the
Section 8 program because it constituted fraud or a failure to
provide accurate information.

At the time of terminating Plaintiff's subsidy, Defendant
has not incorporated its side payment policy into its Section 8
administrative plan, or put notice of the policy in the
information packet it is required to provide participants.  See
24 CFR 982.54 and 982.301, respectively.

In administrative law, if an agency pronouncement "is of
such a nature that knowledge of it is needed to keep parties
informed of the agency's requirement as a guide for their

conduct," it must be published. *D & W Food Centers, Inc. v. Block*, 786 F.2d 751, 757 (6th Cir. 1986). Further, to "pass constitutional muster", an administrative rule "must provide a fair and reasonable warning" of what it prohibits. *Georgia Pacific Corp v. Occupational Safety and Health Review Commission*, 2 F.3d 999 (11th Cir. 1994)

## D. PAYING "SIDE PAYMENTS," WITHOUT MORE, CANNOT BE A BASIS TO DENY PARTICIPATION

Even assuming Defendant had properly adopted and notified Plaintiff of a rule prohibiting side payments, it is not clear that the federal regulations would treat side payments, without more, as grounds for termination of Section 8 voucher assistance. A PHA cannot deny participation based on factors other than those provided for in federal regulations. *Hill v. Richardson*, 740 F.Supp 1393 (S.D. Ind. 1990).

## E. DEFENDANT DID NOT AFFORD PLAINTIFF DUE PROCESS OF LAW

*Goldberg v. Kelly*, 397 U.S. 254 (1970], as codified at 24 CFR Section 982.555 (e)(6), requires that factual determinations relating to the individual family's circumstances be based on a preponderance of the evidence presented at the hearing.

11

(*Goldberg* states the standard to be substantial evidence.) In the case at bar, there is no record of the Defendant's findings of fact or conclusions of law, except for the written decision. Therefore, it is impossible to determine whether Defendant's determination that Plaintiff had engaged in fraud was based on a preponderance of the evidence, or upon probative evidence, or indeed upon any evidence.

*Goldberg* sets five requirements for the termination process: 1) timely notice from the housing authority stating the basis for the proposed termination, 2) an opportunity by the tenant to confront and cross-examine and cross-examine each witness relied upon by the housing authority, 3) the right of the tenant to be represented by counsel, 4) a decision, based solely on evidence adduced at the hearing, in which the reasons for the decision are set forth, and 5) an impartial decision maker. Despite the absence of a record, it is plain that Defendant did not comply with these requirements. The *Goldberg* factors are codified at 24 CFR 985.555.

## 1. Timely notice stating the basis for the proposed termination must be given.

*Goldberg*, and Section 982.555 (c)(2) requires the PHA to give the family prompt written notice that the family may

12

request a hearing. The notice must 1) Contain a brief statement of the reasons for the decision, 2) state that if the family does not agree with the decision the family may request an informal hearing on the decision and 3) State the deadline for the family to request an informal hearing.

Also, 24 CFR 982.555 (e)(2)(i) provides that "the family must be given the opportunity to examine before the PHA hearing any PHA documents that are directly relevant to the hearing." 24 CFR 982.555 (e)(3) provides that "at its own expense, the family may be represented by a lawyer or other representative." Plaintiff was not notified of these rights.

The insufficiency of Defendant's notice to Plaintiff is not subject to reasonable dispute. **EXHIBIT A.**

## 2. The hearing decision must set forth the reasons for its conclusions

The hearing officer's written decision after the hearing on April 23, 2003 states that

"This letter is to inform you, that based upon information reviewed at your Informal Hearing on Monday, April 21, 2003, it has been determined that the decision to terminate your Section 8 Subsidy with the Lansing Housing Commission will be upheld. If

13

you have any questions, please feel free to call our office at (517) 487-6550." **EXHIBIT B.**

The hearing decision does not specify what offense Plaintiff was found to have committed, let alone its findings of fact and reasons for its conclusions. Again, the insufficiency of the written hearing decision is not subject to reasonable dispute.

Therefore, the absence of the above-described *Goldberg* factors from the hearing process, and decision, in this case means that the hearing officer's decision can be given no deference. Any questions of law, including the Defendant's interpretation of federal law, should be reviewed de novo. The Defendant's hearing process and decision in this case are so flawed that they cannot withstand scrutiny according to any plausible standard.

F. **THE LANSING HOUSING COMMISSION HAS SHOWN CALLOUS AND RECKLESS DISREGARD FOR PLAINTIFF'S RIGHTS**

The trier of fact may assess punitive damages in a civil rights action where the Defendant's conduct is shown to involve reckless or callous indifference to the

14

federally protected rights of others. *Whittaker v Fayette County*, 65 Fed. Appx. 387, 2003 U.S. App. LEXIS 6864 (3d Cir., April 9, 2003, Opinion filed.) In the case at bar, Defendant has shown brutal disregard for fundamental fairness. Defendant's counsel admitted that the LHC takes "harsh action to maintain program integrity."

## CONCLUSION

The pleadings, admissions and affidavits of record in this cause show that there is no genuine issue as to any material fact and the Plaintiff is entitled to judgment as a matter of law. Plaintiff prays this Court to enter a judgment that Defendant's actions violated her due process rights under the fifth and fourteenth amendment of the U.S. Constitution, and deprived her of her constitutionally protected property interest in continued occupancy of federally subsidized housing. Plaintiff requests an award to her of all past due benefits for the period May 1, 2003 through November 1, 2003 (when Plaintiff's eligibility was reinstated.) Plaintiff also requests compensatory and punitive damages, including damages for humiliation and emotional suffering.

Respectfully submitted,

LEGAL SERVICES OF SOUTH CENTRAL MICHIGAN

By: Sarah E. Bouck  (P-40216)
3490 Belle Chase Way Suite 50
Lansing, MI 48911
(517) 394-2985 Ext.229

16